**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**CYNTHIA GRANDCHAMP,**

       **Plaintiff,**                    **CIVIL ACTION NO. 09-CV-10282**

    **vs.**                                **DISTRICT JUDGE PAUL D. BORMAN**

**COMMISSIONER OF**             **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

        **Defendant.**
_____/

**REPORT AND RECOMMENDATION**

**I.**     **RECOMMENDATION:**    This Court recommends that Defendant's Motion for Summary Judgment (docket no. 13) be DENIED, that Plaintiff's Motion for Summary Judgment (docket no. 10) be granted in part, and that the case be remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings as set forth herein.

\*\*\*

**II.**     **PROCEDURAL BACKGROUND**

Plaintiff filed an application for Supplemental Security Income on October 5, 2005 with a protective filing date of September 16, 2005, alleging that she had been disabled and unable to work since May 3, 2003 due to back pain, depression, anxiety and a personality disorder. (TR 62, 76). The Social Security Administration denied benefits[1]. (TR 46-49). A requested *de novo* hearing was held on June 27, 2008 before Administrative Law Judge (ALJ) Robert L. Bartelt, Jr. who subsequently found that the claimant was not entitled to Supplemental Security Income because she

---

[1] Plaintiff had filed a prior application for SSI on May 10, 2005, which was denied on July 14, 2005 and for which Plaintiff did not seek a hearing or appeal. (TR 69-72).

was not under a disability at any time from September 16, 2005 through the date of the ALJ's July 18, 2008 decision. (TR 14, 23, 227). The Appeals Council declined to review the ALJ's decision and Plaintiff commenced the instant action for judicial review. (TR 3-5). The parties filed Motions for Summary Judgment and the issue for review is whether Defendant's denial of benefits was supported by substantial evidence on the record.

## III.  PLAINTIFF'S REPORTS, MEDICAL EVIDENCE AND VOCATIONAL EXPERT TESTIMONY

### A.  Plaintiff's Reports

Plaintiff was represented by an attorney at the hearing and did not testify. (TR 227-47). Plaintiff was thirty-six years old at the time of the ALJ's decision. (TR 16). Plaintiff has a high school education. The ALJ concluded that Plaintiff had "no real past relevant work," and Plaintiff reported that she stopped working in November 2001 due to pain and because she was fired. (TR 77). Plaintiff reported that she is unable to work because she is afraid of crowds, the stress of her paranoia is "too much," she has panic attacks, her medications make her sleepy, she cannot concentrate for long period of time, and she has constant pain. (TR 77).

There is no challenge to the ALJ's findings regarding Plaintiff's alleged physical impairments and Plaintiff's appeal is limited to her mental impairments, therefore the Court will not go into evidence of Plaintiff's alleged physical limitations in depth. Plaintiff reported that she cares for her three children, including feeding, grooming and making sure they go to school, she washes dishes, scrubs floors, vacuums, does laundry, cleans the bathroom and prepares food and snacks. (TR 99). Plaintiff's Function Report further lists Plaintiff's complaints of pain and physical activity. With respect to mental limitations, Plaintiff reported that she cannot remember appointments even if they are on "reminder cards," and she does not prepare meals due in part to her attention span.

2

(TR 101). Plaintiff reported that she is afraid to go out alone. (TR 102). Plaintiff reported that she sometimes miscounts her money and overspends and she forgets to put money into her savings account. (TR 102). Plaintiff attends church. She also watches television, reads and crochets but reports that she cannot finish the tasks. (TR 103). Plaintiff reported that she follows written instructions "badly" and always seems "to mess them up," and she forgets spoken instructions "almost immediately." (TR 104). She reported that she handles stress "terribly" and gets long with authority figures "not well" but has not been fired from a job for her failure to get along with others. (TR 105). She reported that she cuts pieces off herself when her stress is "too much to handle" and she has a fear that there are rapists everywhere. (TR 105).

**B.     Medical Record**

On June 9, 2005 Plaintiff underwent a right knee arthroscopy performed by S.E. LaChance, D.O. (TR 115-17). She underwent physical therapy following the arthroscopy. (TR 114, 120). In October 2005 Plaintiff reported left knee pain but an examination of the left knee was normal. (TR 118, 183). State agency consultant Shaikh Sadia completed a Physical Residual Functional Capacity Assessment on November 10, 2005 and concluded that Plaintiff has the ability to lift and/or carry twenty pounds occasionally and ten pounds frequently, stand and/or walk about six hours of an eight-hour workday, sit about six hours of an eight-hour workday and is unlimited in the ability to push and/or pull including the operation of hand and foot controls, consistent with the lifting and carrying restrictions. (TR 128-35). Plaintiff was limited to occasional climbing of ladders, ropes and scaffolds, stooping, kneeling, crouching, and crawling and was to avoid concentrated exposure to hazards including machinery and heights. (TR 130, 132). The consultant noted that Plaintiff complained of constant back pain and that the medical evidence did not completely support the extent of Plaintiff's alleged limitations. He found her partially credible. (TR 133).

Treatment notes from Family Health Center spanning January 17, 2005 through October 26, 2006 show that Plaintiff continued to report knee pain. (TR 180-209). The treatment provider also noted multiple occasions on which Plaintiff requested pain medication and/or increased dosages and on one occasion the provider noted that someone from Dr. LeChance's office had called regarding Plaintiff's request for examination following a fall and the note indicates that the "Dr. feels she's trying to get narcotics." (TR 182, 188, 189, 191, 197, 202, 203). Throughout May and June 2005 Plaintiff was prescribed Darvocet and Tylenol # 3. (TR 191). In July 2005 Plaintiff was taking prescription Prozac, Abilify, Claritin and Valium PRN. (TR 190). In September 2005 the treatment provider noted that Plaintiff was complaining of cramps and pelvic pain but refused an intravaginal examination. On the same date, the provider noted that Plaintiff had lifted her fifty-nine pound daughter onto the examination table by herself. (TR 185).

As set forth above, Plaintiff appeals the findings related to her mental condition and the Court will focus on that evidence in detail. Plaintiff treated with Nanette Watson, M.S.N., and Jimmie L. Harris, D.O., psychiatrist, at Carson Behavioral Health Center from September 7, 2004 to December 29, 2005. (TR 137-52). Plaintiff was diagnosed with major depressive disorder, recurrent and moderate (296.32), history of methamphetamine dependence in remission, and posttraumatic stress disorder (309.81). During this period of treatment, Dr. Harris noted that Plaintiff was cutting and picking at herself and in February 2005 he noted that he told her he wanted to discuss a partial hospitalization program so Plaintiff could have more intensive therapy. (TR 144). On March 28, 2005 Dr. Harris noted that Plaintiff reported having had a road rage episode which Plaintiff attributed to her Abilify medication. (TR 142). On October 13, 2005 Dr. Harris noted that Plaintiff reported that one of her daughters was fighting with Plaintiff and Plaintiff called the police. The daughter hit one of the officers, charges were filed and Plaintiff was concerned

4

about her children being taken away. (TR 139). In December 2005 Plaintiff reported that Child Protective Services had been involved when Plaintiff's older daughter called the police after Plaintiff left the house. (TR 137). Dr. Harris noted that Plaintiff reported that she had been drinking that evening and that is probably why she left the house. (TR 138).

On January 27, 2006 Plaintiff underwent a psychiatric/psychological examination by Leonard J. McCulloch, M.A., Ltd. L.P. and Lois P. Brooks, Ed.D., F.L.P. (TR 154-59). Plaintiff was diagnosed with major depression, chronic and severe with psychotic features (296.34), posttraumatic stress disorder (309.81), history of methane amphetamine dependency/abuse in remission allegedly since 1995, and borderline personality disorder (301.83) and assigned a GAF of 45. (TR 158). Plaintiff's mental trend and thought content was described as spontaneous, logical, organized and coherent and it was noted that she "[c]omplains of auditory and visual hallucinations as well as suicide and homicide and intermittent paranoia." (TR 157).

On February 23, 2006 consultant Blaire Pinaire, Ph.D., L.P., reviewed Plaintiff's file and completed a Mental Residual Functional Capacity Assessment and a Psychiatric Review Technique. (TR 160-79). The doctor found that Plaintiff was either "not significantly" limited or was "moderately" limited in all areas and concluded that she was moderately limited in activities of daily living, had moderate difficulty maintaining social functioning and maintaining concentration, persistence and pace and had no episodes of decompensation. (TR 175). He diagnosed Plaintiff with Major Depressive Disorder/Depressive Disorder NOS, post traumatic stress disorder, borderline personality disorder and history of methane amphetamine dependency/abuse in remission. (TR 168).

Dr. Kustasz, D.O. of Family Health Center, wrote a letter dated October 26, 2006 stating that he was treating Plaintiff "for multiple illnesses that make her unemployable," including bipolar

mania, generalized anxiety disorder, depression, borderline personality disorder, panic disorder, migraine headaches, severe morbid obesity and domestic violence. (TR 181).

On December 5, 2006 Plaintiff underwent a psychiatric evaluation with Ronald J. Van Valkenburg, M.D., M.H.P. (TR 210-212). Dr. Van Valkenburg diagnosed Plaintiff with dysthymic disorder (300.4), posttraumatic stress disorder (309.81), polysubstance dependence in full early remission (304.80) and borderline personality disorder (301.83) and assigned a GAF of 50. (TR 212). Plaintiff's self-report was that her thinking gets "scrambled." (TR 210). Plaintiff was oriented to time, place and person, her recent past memory and remote past memory were intact, she had immediate recall, correctly performed serial subtraction without error, answered seven of the eleven fund of general information questions correctly and did the simpler of two calculations correctly. (TR 211). On June 6, 2008 Dr. Van Valkenburg completed a mental Medical Source Statement on which he indicated that Plaintiff is markedly limited in the following: Ability to relate and interact with supervisors and co-workers; ability to understand, remember and carry out an extensive variety of technical and/or complex job instructions; ability to deal with the public; ability to maintain concentration and attention for at least two hour increments; and ability to withstand the stress and pressures associated with an eight-hour work-day and day-to-day work activity. (TR 226, 238). She is moderately limited in the ability to understand, remember and carry out simple one-or-two step job instructions and handle funds. (TR 226). The doctor also noted that drug addiction or alcoholism has moderately contributed to these limitations. (TR 226).

On September 7, 2007 Plaintiff was admitted to Hope Network Behavioral Services for suicidal ideation and a plan to cut herself. (TR 213-14, 216-17). The notes indicate that Plaintiff reported that she had abused substances within the past seven days, but did not engage in "regular use" of illicit drugs or alcohol. (TR 215). Plaintiff was noted to have fair dress and hygiene, a

depressed affect and expressed anger "at losing kids and at friend who got her to use." (TR 215, 224). Treatment notes dated September 7, 2007 state that Plaintiff reported that she was "very upset with herself for recently using drugs and alcohol." (TR 224). She was discharged on September 9, 2009. (TR 213-14).

Medical expert and psychologist Dr. Robert Brook testified at the June 27, 2008 hearing. (TR 231). Dr. Brook testified that the record showed that Plaintiff's substance abuse was in remission. (TR 232-33). Dr. Brook testified that of Plaintiff's diagnosed disorders, her primary diagnosis was a mood disorder, posttraumatic stress disorder and borderline personality disorder. (TR 234). The doctor testified that Plaintiff had "moderate plus" limitations of activities of daily living, "moderate plus" difficulties in social interactions and moderate difficulties in concentration, persistence and pace and one or two episodes of decompensation. (TR 236). Dr. Brook testified that he saw nothing in the notes that would lead him to believe that Plaintiff would have difficulty in relating to co-workers. (TR 236). Based on her diagnoses of bi-polar and borderline personality disorder, however, it was "easy to believe that she would have difficulty in maintaining interpersonal relationships." (TR 236). He stated that the borderline personality disorder was well established by three different clinicians and by its nature, it "would imply that if you cross her you're going to be in a lot of trouble, . . . Or if she perceives that you're crossing her." (TR 236). He stated that she would have difficulties sustaining long-term relationships even superficially. (TR 237). This testimony included co-workers, supervisors and the public. (TR 237). The doctor found nothing in the record to make him believe that Plaintiff has cognitive limitations. (TR 238).

### C.    Vocational Expert

The Vocational Expert (VE) classified some of Plaintiff's past work into a general category of laborer/stores ranging from medium to heavy exertional level as performed. (TR 243). Plaintiff

also had past work as an unskilled machine operator at the light level of exertion. (TR 243). The ALJ asked the VE to consider an individual of Plaintiff's age, education and work experience limited to no dealing with the public and very little, if any, interacting with co-workers and supervisors and that "the area of completing a normal work day and work week without interruptions from psychologically based symptoms and perform a consistent pace would be all right originally but over the long term would deteriorate to being deplorability (sic) or at least a moderate to markedly limited ability in that area after a while." (TR 244). The VE testified that due to the final element of the hypothetical question, there would be jobs which such an individual could perform but the jobs would be lost due to acting out, poor performance and attendance issues. (TR 244).

The ALJ then asked the VE what jobs would be available if the last element of the hypothetical were not considered. (TR 245). The VE testified that the available jobs would include hand packager (200 sedentary jobs available, 6,000 light jobs and 3,000 medium jobs), inspector (600 sedentary, 5,000 light and 300 medium), and cleaner (no sedentary, 7,000 light and over 65,000 medium). (TR 245)[2].

## IV.    ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that Plaintiff had not engaged in substantial gainful activity since September 16, 2005, suffered from affective, anxiety and personality disorders and a history of substance abuse, all severe impairments, but did not have an impairment or combination of impairments that meets

---

[2] The ALJ stated in the decision that "[p]ursuant to SSR 00-4p, the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles." (TR 22). There is no evidence in the transcript that the ALJ questioned the VE on this issue as required under SSR 00-4p. *See* SSR 00-4p ("When a VE or VS provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE or VS evidence and information provided in the DOT."). The ALJ should comply with SSR 00-4p on remand.

8

or medically equals the Listing of Impairments. (TR 22). The ALJ found that Plaintiff does not have past relevant work but concluded that she had the residual functional capacity to perform a limited range of light work and was capable of performing a significant number of jobs in the economy. (TR 22-23). Therefore, she was not suffering from a disability under the Social Security Act. (TR 23).

## V.     LAW AND ANALYSIS

### A.     Standard Of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases de novo, resolve conflicts in the evidence or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir.

9

1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

### B. Analysis

### 1. *Scope of the Court's Review*

Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1) she was not presently engaged in substantial gainful employment; and

(2) she suffered from a severe impairment; and

(3) the impairment met or was medically equal to a "listed impairment;" or

(4) she did not have the residual functional capacity to perform her relevant past work.

*See* 20 C.F.R. § 416.920(a)-(f) (2009). If Plaintiff's impairments prevented her from doing her past work, the Commissioner, at step five, would consider her residual functional capacity ("RFC"), age, education and past work experience to determine if she could perform other work. If she could not, she would be deemed disabled. *See id*. § 416.920(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987).

Plaintiff raises only one argument on appeal, that the ALJ's decision at step five is not supported by substantial evidence because the ALJ presented an inaccurate hypothetical question to the VE. (Docket no. 10).

### 2. *Whether The ALJ's Hypothetical Question To The VE Was Accurate and Accounted For*

10

*Plaintiff's Limitations*

Plaintiff argues that the ALJ utilized an inaccurate hypothetical question which did not account for all of Plaintiff's mental limitations and therefore erred in relying on the VE's testimony to find that there were jobs available which Plaintiff could perform. Plaintiff's underlying argument is that the VE did not explain why he rejected a portion of the medical expert's testimony which would have resulted in finding Plaintiff disabled. (Docket no. 10 at p. 11 of 13).

As set forth above, at step five, the Commissioner has the burden of showing that there is work available in the economy which Plaintiff can perform and the finding must be supported by substantial evidence. This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Varley*, 820 F.2d at 779. In this matter, the Court is unable to reach the issue of whether the ALJ's hypothetical question was accurate due to the underlying error in the ALJ's decision. The ALJ has not made the required findings regarding the evaluation of Plaintiff's mental impairments[3]. *See* 20 C.F.R. § 416.920a(e).

Although not precedent, the Court finds persuasive a district court case from the Eleventh Circuit in which the claimant made an appeal similar to Plaintiff's appeal in this matter. *See Harrison v. Astrue*, 2009 WL 2044688 (M.D. Fla. July 10, 2009). In *Harrison,* the claimant appealed the ALJ's decision and raised only the single issue of the sufficiency of the hypothetical question presented by the ALJ to the VE, on whose testimony the ALJ relied. *Id.* at *3. The

---

[3] Again the Court notes that Plaintiff has not appealed the ALJ's findings related to her physical impairments. A review of the record and the ALJ's decision shows that the ALJ's findings related to Plaintiff's physical impairments are supported by substantial evidence, including the ALJ's reference to Plaintiff's varied physical activities of daily living and the lack of objective medical evidence regarding any physical conditions other than the right knee arthroscopy. (TR 17, 20).

*Harrison* court identified the more obvious flaw in the ALJ's decision. *Id.* at *3. Despite the ALJ having restated the findings of a psychologist, the ALJ never followed the special procedures set out at 20 C.F.R. §§ 404.1520a and 416.920a to evaluate a mental impairment and nothing in the decision indicated that the ALJ adopted the psychologist's findings as his own. *Id.* at *4. "It is Plaintiff's alleged mental impairments and the degree of functional limitations arising out of those impairments which are at issue in the posited hypothetical questions." *Id.* at *4. The ALJ's decision suffers the same flaw.

The Commissioner has prescribed rules for evaluating mental impairments. *See* 20 C.F.R. § 416.920a. The Commissioner first determines whether there is a medically determinable mental disorder specified in one of nine diagnostic categories. *See id.*; 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00A. Thereafter, the Commissioner measures the severity of a mental disorder in terms of functional restrictions, known as the "B" criteria, by determining the frequency and intensity of the deficits.

The "B" criteria require an evaluation in four areas with a relative rating for each area. *See* 20 C.F.R. § 416.920a(c)(3). The Commissioner must evaluate limitations in activities of daily living, social functioning and concentration, persistence, or pace and rate those on a five-point scale ranging between none, mild, moderate, marked, and extreme. The fourth area is deterioration or decompensation in work or work-like settings and calls for a rating of never, one or two, three, and four or more. "The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity." 20 C.F.R. § 416.920a(c)(4).

Despite the fact that the only severe impairments which the ALJ found that Plaintiff has are mental impairments, nowhere in the ALJ's decision does he set forth his findings with respect to the "B" criteria. His decision references the medical expert's discussion of the "B" criteria, but, like

*Harrison*, there is no indication that the ALJ adopted the medical expert's findings. Even if he had, the medical expert testified that Plaintiff was "moderate plus" in the two categories of activities of daily living and social interaction. The expert assigned a "moderate" limitation to concentration, persistence and pace and concluded that Plaintiff had one or two "levels" of decompensation. (TR 235-36). Aside from the ALJ failing to state whether he was adopting the medical expert's opinion, the expert's opinion was mis-stated in the decision as "claimant had *at most* moderate restriction of activities of daily living, moderate difficulties in maintaining social functioning, and moderate deficiencies of concentration, persistence or pace . . . ." (TR 19, emphasis added). The expert had clarified his testimony stating that he meant "moderate plus," and that "moderate plus on two categories is getting pretty close," thus clarifying that by "moderate plus" he meant *more than* moderate, not "*at most* moderate." (TR 240). There is no room on the five-point scale on which the ALJ is to rate Plaintiff's mental limitations for a "moderate plus" rating. *See* 20 C.F.R. § 416.920a(c)(4). The ALJ's failure to engage in the evaluation of Plaintiff's mental impairment is a material omission. The ALJ has determined that Plaintiff has three severe mental conditions, affective disorder, anxiety disorder and personality disorder with a history of substance abuse. In this action multiple clinicians have opined that Plaintiff has moderate to marked limitations in certain areas. The Court should remand this case at which time the ALJ will evaluate Plaintiff's mental impairments and follow the steps set forth at 20 C.F.R. § 416.920a and explicitly state his findings in each functional area. The ALJ must then reevaluate Plaintiff's RFC and complete steps four and five.

### 3.     *Remainder of the Record*

Although the following issues are not raised directly in Plaintiff's motion, they are implicitly brought to bear by the argument that the ALJ's hypothetical question does not incorporate all of

13

Plaintiff's limitations and that the ALJ did not fully explain his discounting of medical opinions. Because the ALJ failed to evaluate Plaintiff's mental impairments, it is not clear whether the ALJ gave correct consideration to all of the mental impairments and whether they were adequately included in the hypothetical question. For this reason, other errors should be corrected on remand.

Under 42 U.S.C. § 423 (d)(2)(C) and 20 C.F.R. § 416.935(b)(1) the ALJ is required to make a determination about whether alcoholism or drug addiction is a contributing factor material to a disability determination. 42 U.S.C. § 423(d)(2)(C) provides that "[a]n individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." *See also* 20 C.R.F. § 416.935(a). The regulations provide that "[t]he key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol." 20 C.F.R. § 416.935(b)(1). Despite the ALJ finding that Plaintiff has a "history of substance abuse," the ALJ has not clearly set forth a finding regarding whether Plaintiff's alcoholism or drug addiction is a contributing factor material to the determination of whether she is disabled. The ALJ points out that "obviously when [Plaintiff] is drinking or abusing drugs, there will be problems." (TR 21). The ALJ also points out that "most of the notes indicate that claimant's substance addiction disorder has been in remission," yet in the same paragraph references an incident in December 2005 when Plaintiff's "children were removed by Child Protective Services during a bout of excessive alcohol consumption [which] underscores the seriousness of the issue." (TR 21). The ALJ concludes that "[s]o long as it remains [in remission], there is absolutely no reason that claimant could not perform simple, unskilled tasks of a sedentary and light nature where there is limited contact with others." (TR 21). The Court notes that treatment notes from the

September 2007 hospitalization also indicate that Plaintiff had recently been using drugs and alcohol. (TR 224). The ALJ should make clear findings on this issue on remand, including, if applicable, a date at which Plaintiff's abuse was in remission and, if necessary, evaluating her mental impairment and limitations both before and after that date.

The Court also notes that the ALJ appears to have discounted the note in mental consultative examiner psychologist McCulloch's report that Plaintiff had reported hallucinations and presumably discounted the accompanying diagnosis of "Major Depression, chronic, severe *with psychotic features*" based on something akin to his own medical judgment. (TR 154-59, emphasis added). While the ALJ is certainly within his authority to weigh the evidence of record, the ALJ may not substitute his own medical judgment for that of a medical source. *See Winfrey v. Chater*, 92 F.3d 1017, 1022 (10th Cir. 1996); *see also Vance v. Astrue*, 2009 WL 4396490 at *9 (S.D. Ohio Dec. 2, 2009) (citing *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000)).

Psychologist McCulloch is an acceptable medical source. *See* 20 C.F.R. § 416.913(a)(2). McCulloch noted that Plaintiff reported that she hears the voices of Satan and angels and that she sees fleeting shadows or images. (TR 155). McCulloch noted with respect to "stream of mental activity" that Plaintiff "said she saw shadows leaving the room here such that reality ties are suspect. She notes poor self-esteem. She does not appear to be misrepresenting herself." (TR 157). McCulloch noted with respect to "mental trend/thought content" that Plaintiff was "[s]pontaneous, logical, organized and coherent. Complains of auditory and visual hallucinations as well as suicide and homicide, intermittent paranoia." (TR 157). In the category of Plaintiff's "past and present interests" McCulloch noted that Plaintiff "belongs to the Church of the Latter Day Saints and recently had (sic) sex with a guy so she is on probation with the church," and listed Plaintiff's other interests and activities. (TR 156). The ALJ's statement in response to McCulloch's report of

Plaintiff hearing voices and having hallucinations is the following:

> As to the "voices" of the devil and angel, Ms. McCulloch considered those to be hallucinations, apparently not considering the fact that they may simply be claimant wrestling with her conscience, the report indicating that claimant was an active member of the Church of the Latter Day Saints and had recently been put on probation by the church for "having sex with a guy" suggesting some religious overtones to her presentation on the day she was seen by the consultant.

This explanation does not appear in McCulloch's report and no where in the report does McCulloch state that there were "religious overtones" to Plaintiff's presentation on that date. In fact, McCulloch found that Plaintiff did not appear to be misrepresenting herself and diagnosed her with depression with psychotic features. (TR 157). The ALJ's psycho-analysis has no place in weighing the medical evidence of record.

Similarly, the ALJ's statement with respect to Dr. VanValkenburg's report that "[i]t was apparently his opinion that claimant was somewhat overmedicated, as one of his first actions was to recommended slowly weaning claimant from the Valium she was taking, while continuing at the current dosages for the Seroquel and Prozac." (TR 19). While the record shows that the doctor did decrease Plaintiff's Valium and continue the Seroquel and Prozac, no where in the report does the doctor call Plaintiff "overmedicated," and the ALJ's statement of the same is speculative[4]. The ALJ then criticized an incorrectly dated form regarding Plaintiff's mental residual functional capacity.

---

[4]Although Plaintiff's physical impairments are not before this Court on appeal and the ALJ's findings with respect to the same are supported by substantial evidence, the Court notes that the ALJ also engaged in speculation regarding Plaintiff's complaints of joint pain and her weight, by stating that "[i]t should be noted that claimant is quite obese, her weight approaching 300 pounds compared to a height of 56 inches, which could affect her weight bearing joints to some extent, including the knees and spine, but there is nothing to suggest any significant musculoskeletal impairment." (TR 17). The ALJ made this statement without citing specific medical evidence and the Court does not find any to support the same. In light of the ALJ's correct conclusion that "there is nothing to suggest any significant musculoskeletal impairment," the remainder of the comment amounts to little more than gratuitous speculation. (TR 17).

The form was dated June 6, 2006 (six months prior to the first time the doctor saw Plaintiff). (TR 19, 226). The ALJ stated that "[i]t is unclear whether in completing the form, the date that Dr. Van Valkenburg gave was meant to either be December 6, 2006 or June 6, 2007 or 2008. What is clear is that the psychiatrist in completing the form was rather careless." (TR 19). Despite the ALJ's statement in the decision, this issue was cleared up at the hearing, which pre-dates the ALJ's decision. Plaintiff's counsel testified that the date was "6/6/08" and that the form was completed a couple of weeks prior to the hearing. (TR 238).

"While the ALJ is not required to address every piece of evidence, he must articulate some legitimate reason for his decision. Most importantly he must build an accurate and logical bridge from the evidence to his conclusion." *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (internal citations omitted). It is not possible for the Court to tell whether the ALJ applied the proper standards in evaluating the medical evidence and evaluating Plaintiff's mental impairments. Therefore, this case should be remanded and all medical evidence related to Plaintiff's mental impairments must be considered and weighed in accordance with the regulations and case law and Plaintiff's RFC must be reassessed. The ALJ may reopen the record and accept additional evidence, including vocational testimony if necessary.

## VI.    CONCLUSION

For the reasons set forth herein the ALJ's opinion is not supported by substantial evidence. Defendant's Motion for Summary Judgment (docket no. 13) should be denied, that of Plaintiff (docket no. 10) granted in part and the case remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings as set forth herein.

## REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: January 25, 2010    s/ Mona K. Majzoub
　　　　　　　　　　　　　　MONA K. MAJZOUB
　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE


**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: January 25, 2010    s/ Lisa C. Bartlett
　　　　　　　　　　　　　　Case Manager